FRED A. RISSER, Chairman Senate Organization Committee
On behalf of the Senate Organization Committee, you have requested my opinion as to whether sec. 84.30(10)(a), Stats., authorizes the Highway Commission to impose a licensing requirement on persons who fabricate and erect signs advertising activities conducted on the property where the sign is located. Section 84.30(10)(a), Stats., provides in part:
 "On or after January 1, 1972, no person shall engage or continue to engage in the business of outdoor advertising in areas subject to this section without first obtaining a license therefor from the highway commission. . . ."
In 1976, pursuant to the authority granted under sec.84.30(14), Stats., to "promulgate rules deemed necessary to implement and enforce the provisions of this section" and in accordance with the requirements of sec. 227.018, Stats., after proper notice and hearing the Highway Commission adopted and revised certain rules regarding the regulation of outdoor advertising. Among the new rules was Wis. Adm. Code section Hy 19.006 which contains the following language:
 "The licensing requirement under section 84.30 (10). Wis. Stats., applies to persons who erect or maintain on-property signage as well as to persons who erect or maintain off-premise advertising signs. Persons who erect or maintain signs for the purpose of advertising their own business are not subject to the licensing requirement. The licensing requirement does not apply to persons who erect 2 or less signs during the calendar year. . . ."
The Highway Commission has thus interpreted sec. 84.30(10)(a), Stats., to require that all persons who erect and maintain on-premise as well as off-premise signage be licensed. Those who erect or maintain signs for the purpose of advertising their own business are clearly exempted by Wis. Adm. Code section Hy 19.006, quoted above, and are not affected by an interpretation of sec. 84.30(10)(a), Stats. Representatives of various aspects of the sign industry assert that the Legislature intended that the licensing requirement apply only to persons who erect and maintain off-premise *Page 297 
advertising signs for rental purposes and that the Highway Commission's rule is therefore void insofar as it seeks to regulate on-premise signage.
A preliminary discussion of my role is in order. As you know, the interpretation given a statute by the agency responsible for its administration is, as a general rule, entitled to great weight. Trczymiewski v. Milwaukee, 15 Wis.2d 236, 112 N.W.2d 725
(1961); see also Vol. 15 Callaghan's Wisconsin Digest sec. 194,Statutes, pp. 191-193 (pocket part). When the interpretation of a statute is at issue and administrative interpretation has been made, the role of the Attorney General is to first determine whether the administrative interpretation is a reasonable one. If the interpretation is reasonable and consistent with the statute that ends the inquiry even though the Attorney General might independently have reached a different conclusion. The analysis of sec. 84.30(10)(a), Stats., which follows is restricted by this principle to determining whether the interpretation given to sec.84.30(10)(a), Stats., in Wis. Adm. Code section Hy 19.006 by the Highway Commission is reasonable.
The words "engage in the business of outdoor advertising" used in sec. 84.30 (10)(a), Stats., are not defined in that subsection, nor does a definition appear elsewhere in sec. 84.30, Stats. The phrase is broad and admittedly capable of several different meanings. Consequently, I conclude that the statute is ambiguous and subject to construction. Kindy v. Hayes, 44 Wis.2d 301,171 N.W.2d 324 (1969). In analyzing whether the Highway Commission's interpretation of this phrase is a reasonable one, one is obliged therefore to look beyond the words themselves. An examination of the statute itself, its legislative history, and the language of the Federal Highway Beautification Act which originally spurred legislative initiatives to revise sec. 84.30, Stats., provides some revealing information. The goal of statutory construction is to arrive at the intent of the Legislature. Kindy, supra; Stateex rel. Mitchell v. Superior Court, 14 Wis.2d 77, 109 N.W.2d 522
(1961).
1. The Statute As A Whole
The intent of a given section of a statute is to be derived from the whole act. State ex rel. B'nai B'rith F. v. WalworthCounty, 59 Wis.2d 296, 208 N.W.2d 113 (1973). Thus, whether the Highway Commission's interpretation of sec. 84.30(10)(a), Stats., is in *Page 298 
keeping with the legislative intent in enacting that particular subsection may become apparent by examining other parts of the statute.
Section 84.30(1) sets forth the legislative findings and purpose as follows:
 "Legislative findings and purpose. To promote the safety, convenience and enjoyment of public travel, to preserve the natural beauty of Wisconsin, to aid in the free flow of interstate commerce, to protect the public investment in highways, and to conform to the expressed intent of congress to control the erection and maintenance of outdoor advertising signs, displays and devices adjacent to the national system of interstate and defense highways, it is hereby declared to be necessary in the public interest to control the erection and maintenance of billboards and other outdoor advertising devices adjacent to said system of interstate and federal-aid primary highways." (Emphasis added.)
The above-emphasized language in sec. 84.30(1), Stats., is indicative of a general legislative intent to provide extensive control over the whole area of erection and maintenance of outdoor advertising devices. The definition of "erect" in sec. 84.30 (2)(e) with its long list of the physical processes by which such advertising devices may be brought into being echoes this comprehensive tone. The definition provides in part:
 "`Erect' means to construct. build, raise, assemble, place, affix, attach, create, paint, draw, or in any other way bring into being or establish; . . ."
In addition, sec. 84.30(3), Stats., which sets out the prohibited signs, the excepted signs, and the standards of size and location which are to be maintained for excepted signs clearly demonstrates that both on-premise and off-premise advertising signs fall within the scope of the statute and are to be regulated.
In view of the above material, one could certainly conclude that the Highway Commission's reading of sec. 84.30(10)(a) to include both on-premise and off-premise signage within the licensing requirement accurately mirrors an obvious legislative intent to provide a broad regulatory system which would cover all outdoor advertising devices. *Page 299 
2. Legislative History
The legislative history of the revisions of and amendments to see. 84.30 is long. Many bills were introduced both in the Senate and in the Assembly — some were defeated, others died at the end of the session — before the substitute amendment to Assembly Bill 1411 was passed in 1971 (L 1971, ch. 197, see. 3). Most of the variations in the bills are immaterial to our present purpose: however one item which was proposed and ultimately rejected is enlightening.
In 1969 Assembly Bill 829 was introduced. Like the present sec. 84.30, this bill declared in sec. 3 that:
 ". . . no person shall engage or continue to engage in the business of outdoor advertising in areas subject to this section without first obtaining a license therefor . . . ."
Subsection 7.2 of the bill provided an explicit exception for on-premise signage. It contained the following emphatic language:
 "None of the provisions of sec. 3 (licensing), sec. 4 (permits), or subsec. 6.2 (general size and position regulations) shall apply to posting, erection or maintenance of any advertising device used solely to advertise a commercial establishment located on, or farm produce, merchandise, or other article of commerce, services or entertainments, sold, produced, extracted, processed, manufactured or furnished on the property on which such device is located or within 250 ft. of such property."
It is difficult to construct an affirmative argument based on specific language contained in a bill which was ultimately rejected as a whole by the Legislature. It can at least be said that nothing in the legislative history of sec. 84.30, Stats., contradicts or compromises the Highway Commission's interpretation. Indeed, as the above-quoted proposed and defeated version of the present statute illustrates, the legislative history tends to further support the reasonableness of the Highway Commission's conclusion that "engage in the business of outdoor advertising" in sec. 84.30 (10)(a), Stats., was meant to include all persons who erect or maintain advertising signage, not merely those who erect off-premise advertising signs for rental purposes.
3. Federal Highway Beautification Act *Page 300 
The Federal Highway Beautification Act of 1965 (23 U.S.C. § 131) which originally prompted the Legislature's efforts to revise sec. 84.30 and thereby to provide for more effective outdoor advertising control does not require states to establish licensing procedures. In addition, the regulations issued by the Federal Highway Administration to implement the Highway Beautification Act contain language which indicates that for federal purposes the phrase "engage in the business of outdoor advertising" relates only to off-premise signage. Title23 C.F.R. sec. 750.709 (1976).
However, the Federal Highway Beautification Act, by its own terms, is clearly non-preemptive:
 "(k) Nothing in this section shall prohibit a State from establishing standards imposing stricter limitations with respect to signs, displays, and devices on the Federal-aid highway systems than those established under this section." 23 U.S.C. § 131.
Therefore, I conclude that in view of the non-preemptive nature of the federal law and although sec. 84.30 was "initially adopted to bring the state into harmony with the federal act so as to ensure future eligibility for federal highway aids and grants" (63 Op. Att'y Gen. 285 (1974)), the expansive language and legislative history of Wisconsin's outdoor advertising regulations provide a strong indication that the Legislature did in fact intend to go beyond the federal minimum requirements. The Highway Commission's broad interpretation of "engaged in the business of outdoor advertising" itself exceeding the federal standards on this subject can thus be seen as an accurate reflection of this legislative intent and, consequently, a reasonable interpretation of the statute.
One further observation remains to be made. In effect, the Highway Commission's interpretation of sec. 84.30(10)(a) in Wis. Adm. Code section Hy 19.006 implicitly involves a classification of those who erect signs into two groups: owners who erect on-premise signs themselves on their own property; and others, i.e., those who erect and maintain off-premise signs and those who erect on-premise signs, but are not the owners of the property on which the signs are erected. It has been suggested that this interpretation results in an irrational classification. Thus, some attention should be given to the logic of this interpretation based on the purposes of the outdoor *Page 301 
advertising statute, the evils it proposed to remedy, and the nature of the different classes involved.
The legislative findings and purpose of sec. 84.30 (1), Stats., quoted above, details the significant public concerns understood by the Legislature to be at issue. The experience of travel on roads with endless scenery-spoiling billboards provides universal exposure to the evils the Legislature intended to remedy. I find no lack of logic in the conclusion that the fulfillment of such purposes as the promotion of safety, convenience and enjoyment of public travel and the preservation of the natural beauty or Wisconsin supports enforcement of the licensing requirement on those who erect and maintain on-property signage as well as those who erect and maintain off-premise signs. If anything, a classification which exempted all on-premise signs would also raise questions of reasonable classification.
The fact that persons who erect or maintain signs for the purpose of advertising their own business have not been included in the phrase "engage in the business of outdoor advertising," according to the interpretation given the phrase by the Highway Commission, requires little analysis. The "difference between doing in self-interest and doing for hire" has long been recognized. Railway Express Agency v. New York, 336 U.S. 106,115-117, 69 S.Ct. 463, 93 L.Ed. 533 (1949). The determination that the sensibilities of neighbors and customers may offer a restraint on the owner which is not felt by others is unquestionably a valid one. United Advertising Corp. v. Metuchen,198 A.2d 447, 450 (1964).
In conclusion, it is my opinion that the Highway Commission's interpretation of sec. 84.30 (10)(a) in Wis. Adm. Code section Hy 19.006 is a reasonable interpretation of that subsection. The language of the statute as a whole, its legislative history, its purpose, the classifications which result from the Highway Commission's interpretation, all support the Highway Commission's determination expressed in the rule that "the licensing requirement under sec. 84.30 (10), Stats., applies to persons who erect or maintain on-property signage as well as persons who erect or maintain off-premise advertising signs."
BCL:PRS *Page 302