PER CURIAM.
¶1 Sharlene Bertram appeals a judgment entered in favor of the Estate of Dolores E. Kreitlow, premised on its claims of undue influence and breach of fiduciary duty against Bertram for her conduct while acting as Kreitlow's power of attorney for finances and property. For the reasons that follow, we affirm
¶2 Dolores Kreitlow died in 2015 at the age of eighty-three. She was divorced and had eight children, one of whom predeceased her. This case concerns her daughter, Sharlene Bertram, and financial transactions occurring during Kreitlow's lifetime, while Bertram acted as her mother's power of attorney for finances and property.
¶3 In March 2007, Kreitlow executed a durable power of attorney naming her son and Bertram as co-agents. The power of attorney would become "effective upon the disability or incapacity of Kreitlow." Two months later, Kreitlow signed a basic power of attorney for finances naming Bertram as the primary agent and Bertram's son as the successor agent. Bertram lives with her son and his two minor children. Unlike the prior power of attorney, this one became effective immediately. In 2011, Kreitlow signed another statutory power of attorney for finances and property, identifying Bertram as the primary agent and Bertram's son as successor.
¶4 In 2009, while Bertram was Kreitlow's power of attorney, two limited liability companies were created: GPM Systems, LLC, and FME Properties, LLC. According to Bertram, GPM is an acronym for "Get Pissed Mom," while FME stands for "Former Menard's Employee." Bertram testified that she organized FME but did not recall if she organized GPM, though GPM's registered agent was the address for Bertram's boyfriend's restaurant. From September 2009 to March 2010, more than $46,000 was deposited from Kreitlow's personal bank account into GPM's account. In 2012, these funds were moved into FME's account. The money was later used to pay Bertram's legal fees.
¶5 Bertram lost her job at Menard's in 2007, the same year that Kreitlow signed the power of attorney. From 2007 to 2012, Bertram would take Kreitlow to the bank and assist her in making monthly withdrawals of $3000 to $8000. From 2008 to 2011, Bertram deposited $15,476.51 into her personal credit union account and paid off $5,909.00 in credit card debt. In 2009, Bertram established a Uniform Transfer to Minors Act account for her grandson with a $1000 deposit, and in 2011, she deposited another $13,187.77.
¶6 In 2012, Bertram petitioned for the guardianship of Kreitlow, asserting that she was incompetent due to a degenerative brain disorder and that she suffered from "mild to moderate dementia." Because family members objected to Bertram's appointment, the court appointed Attorney Kim Haines as Kreitlow's temporary guardian. Bertram was ordered to give a full accounting of all financial records.
¶7 Haines was appointed as permanent guardian for the person and property of Kreitlow. In November 2012, she filed a motion for contempt against Bertram for her failure to file the accountings for her mother's finances and property as ordered by the court. Bertram provided about eight months' worth of Kreitlow's bank statements. Ultimately, Haines retained counsel to pursue a potential claim against Bertram for deficient accounting. Bertram was deposed in April 2015 as part of the guardianship proceeding. Kreitlow died two months later. The guardianship ended and probate was opened.
¶8 The court appointed Attorney Michael Kaiser to serve as personal representative for Kreitlow's estate. Kaiser filed objections to claims submitted by Bertram and retained counsel to pursue claims against Bertram including breach of fiduciary duty, undue influence, lack of capacity and competency, and theft.
¶9 Bertram filed a motion for summary judgment, which the circuit court granted in part and denied in part. It denied summary judgment as to undue influence and breach of fiduciary duty, allowing the estate to continue these claims. It granted summary judgment on and dismissed the theft claim. The estate withdrew its lack of capacity and competence claims. The parties disputed the applicable statute of limitations. Bertram argued it was three years under WIS. STAT. § 893.57 (governing intentional torts to the person), while the estate argued for an eleven-year time frame: six years under WIS. STAT. § 893.93 (governing statutory claims unless otherwise provided), plus a five-year extension under WIS. STAT. § 893.16 (tolling the time for a person deemed incompetent). The circuit court determined that the applicable limit was six years, see § 893.93, because Bertram's "potential liability is created statutorily under [ WIS. STAT. ch. 244]."
¶10 The case proceeded and, following a three-day bench trial, the circuit court found "that the evidence supporting the undue influence and breach of fiduciary duty claims ... was proved by clear, satisfactory, and convincing evidence and that Bertram's rebuttal testimony did not defeat such evidence[.]" The court entered judgment against Bertram in the amount of $42,165.00 plus statutory attorney fees and costs. The court found that $42,165.00 was appropriate "to restore the value of the property as required under [ WIS. STAT. ] Ch. 244," and explained that the figure represented the $36,256.00 transferred from the GPM account into the FME account "and then spent by Bertram in paying her own lawyers ... which is outside the alleged purpose of GPM, LLC," along with $5909.00 withdrawn by Kreitlow and deposited into Bertram's account. The circuit court determined that Bertram could still inherit under the will, and dismissed her claims against the estate.[1] Bertram appeals.
DISCUSSION
Bertram forfeited any claim that the personal representative lacked standing to pursue claims related to the transfer of funds from GPM Systems.
¶11 With respect to the GPM money, the circuit court found that,
Bertram helped Kreitlow set up and fund the GPM LLC and used Kreitlow's funds set aside in GPM LLC account to pay Bertram's own lawyers to defend herself and not for the purpose that GPM LLC was established and such finding by the Court supports the finding of undue influence.
Bertram argues that this claim belongs to GPM and that the personal representative lacks "standing to bring the claim that money was taken from the LLC."
¶12 We reject Bertram's challenge because she failed to raise it in the circuit court. See Gibson v. Overnite Transp. Co., 2003 WI App 210, ¶9, 267 Wis. 2d 429, 671 N.W.2d 388 (generally, we will not consider issues raised for the first time on appeal). Further, the failure to name necessary parties is an affirmative defense under WIS. STAT. § 802.06(2)(a)7. Affirmative defenses not pled are forfeited. Oetzman v. Ahrens , 145 Wis. 2d 560, 571, 427 N.W.2d 421 (Ct. App. 1988).
The circuit court properly determined that Bertram unduly influenced Kreitlow.
¶13 Next, we affirm the circuit court's factual finding that Bertram unduly influenced Kreitlow. Undue influence in the execution of inter vivos conveyances is proved in the same way as with the execution of a will, using a two-element or a four-element test. In re Estate of Taylor , 81 Wis. 2d 687, 699, 701, 260 N.W.2d 803 (1978). The two-element test is proved by the existence of a confidential or fiduciary relationship between the grantor and the grantee coupled with suspicious circumstances. Id . at 701. The existence of both elements raises a rebuttable presumption of undue influence. In re Estate of Kamesar , 81 Wis. 2d 151, 164, 259 N.W.2d 733 (1977). Bertram acted as her mother's attorney-in-fact during the relevant periods and thus, does not dispute the first element.
¶14 With regard to the second element, we agree with the circuit court and the estate that the record is replete with suspicious circumstances. As an initial matter, it was suspicious that roughly two months after Bertram was appointed co-agent under a durable power of attorney effective only upon her mother's disability or incapacity, she was made the sole agent, effective immediately. The circuit court's findings as set forth in the judgment include that: Bertram made numerous cash withdrawals from Kreitlow's bank account which were not in the financial interest of Kreitlow; Bertram could not provide a credible accounting; Bertram "was not a credible witness and ... her testimony was evasive and self-serving"; Bertram's testimony regarding the LLCs she helped create was "incredible" and she used the funds in GPM to pay her own legal fees; Bertram wrote some of Kreitlow's checks from Kreitlow's account; Bertram testified that she would take her mother to the bank to cash checks and though Kreitlow would leave with thousands in cash, Bertram could not account for how any of the cash was spent; and Bertram's unemployment made it impossible to explain how she was able to make large cash deposits into her personal accounts. These findings are supported by the record and are not clearly erroneous. See WIS. STAT. § 805.17(2) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").
¶15 As for Bertram's explanation that she "was being supported by her boyfriend and living with her son free of charge," the circuit court rejected her explanation and found that "Bertram was not a credible witness and that her testimony was evasive and self-serving." We defer to the circuit court's credibility determinations; the fact finder "has the opportunity to observe firsthand the demeanor of the witnesses and gauge the persuasiveness of their testimony." Welytok v. Ziolkowski , 2008 WI App 67, ¶28, 312 Wis. 2d 435, 752 N.W.2d 359. The circuit court's finding of undue influence is well explained and amply supported by the record.
The circuit court properly determined that Bertram breached her fiduciary duty to Kreitlow.
¶16 Though not necessary to our decision, we also affirm the circuit court's finding that Bertram breached her fiduciary duty as agent for Kreitlow's power of attorney.[2] The circuit court's findings on undue influence also support the fiduciary breach claim and we will not repeat them here. Other relevant circuit court findings include that: numerous cash withdrawals were made with the knowledge and assistance of Bertram "acting in her capacity as Power of Attorney Agent"; Kreitlow did not need the cash withdrawals she was making since many of her expenses were being directly withdrawn from her checking account or being paid from her Trust; and "Bertram acted in her own best interests and not in the best interests of Kreitlow by knowingly allowing and assisting Kreitlow to withdraw substantial sums of cash when there was no need for her to have such money." These findings are not clearly erroneous.
¶17 According to Bertram, the circuit court's finding that she "acted in her own best interests and not in the interests of Kreitlow" reads "an additional duty into WIS. STAT. § 244.14." We disagree. As set forth in the estate's brief, after the adoption of the Uniform Power of Attorney for Finances and Property Act, a power of attorney became duty bound to "[a]ct in accordance with the principal's reasonable expectations to the extent actually known by the agent and, if those expectations are not known, in the principal's best interest." Sec. 244.14(1)(a). The statute created new "restrictive provisions" which require an agent to consider the principal's "reasonable expectations or best interest." State v. Bryzek , 2016 WI App 48, ¶15, 370 Wis. 2d 237, 882 N.W.2d 483.
¶18 We also reject Bertram's argument that the estate's breach of fiduciary duty claim is time barred because it is grounded in common law rather than statute and is subject to the WIS. STAT. § 893.57 three-year limit for intentional torts. As stated by the circuit court in rejecting Bertram's claim, the personal representative pled the statutory language and "Bertram's potential liability is created statutorily under WIS. STAT. [ch.] 244." In designating Bertram as her agent, Kreitlow signed a "Wisconsin Statutory Power of Attorney for Finances and Property" (emphasis added) that referenced ch. 244. Further, the circuit court explicitly found that Bertram "breached her fiduciary duty under Ch. 244," and that the statutory "remedy therein is appropriate," ordering Bertram to "restore the value of the property as required under Ch. 244." See WIS. STAT. § 244.17(1) - (2) ("An agent who violates this chapter is liable to the principal or the principal's successors in interest for the amount required to ... [r]estore the value of the principal's property" and provide reimbursement "for the attorney fees and costs and costs paid on the agent's behalf.").
Bertram has forfeited or failed to develop any objection to the admission of bank records at trial.
¶19 Bertram's final argument is that she is entitled to a new trial because the circuit court improperly allowed the use of certain bank records at trial. Her claim is that the bank records should not have been admitted at trial because the personal representative subpoenaed them prior to the circuit court's first order for discovery.
¶20 We are not persuaded. First, Bertram never moved to quash to subpoena, nor did she file a pretrial motion to exclude the records. Had the issue been raised before trial, any alleged error could have been corrected by, for example, a new document request. Second, any alleged error was corrected by the testimony of the bank representatives who authenticated the records. Finally, Bertram was unable to provide legal support for her "suppression" request to the circuit court at trial or to this court on appeal. The criminal case cited in her opening brief is inapt, and we will not consider her unsupported and undeveloped legal argument.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

According to the record, Bertram made at least two claims and the personal representative objected to both. On appeal, Bertram does not discuss or challenge the circuit court's decision denying her claims against the estate.

The circuit court determined that the damages to the estate were caused both by Bertram's undue influence and her breach of fiduciary duty. Accordingly, we need only affirm the circuit court on one of these two claims. See Sweet v. Berge , 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (this court need not address other issues when one is dispositive).