**2019 WI App 59**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2018AP547

Complete Title of Case:

### STATE OF WISCONSIN EX REL. MICHAEL ANDERSON,

#### PETITIONER-APPELLANT,

#### V.

### TOWN OF NEWBOLD,

#### RESPONDENT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | October 29, 2019 |
| Submitted on Briefs: | February 19, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Timothy B. Melms* and *Mary M. Hogan* of *Hogan & Melms, LLP*, Rhinelander. |
| Respondent<br>ATTORNEYS: | On behalf of the respondent-respondent, the cause was submitted on the brief of *Daniel L. Vande Zande* and *Sam Kaufman* of *Vande Zande & Kaufman, LLP*, Waupun. |

COURT OF APPEALS
DECISION
DATED AND FILED

October 29, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2018AP547**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV55

**IN COURT OF APPEALS**

STATE OF WISCONSIN EX REL. MICHAEL ANDERSON,

   PETITIONER-APPELLANT,

 V.

TOWN OF NEWBOLD,

   RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Oneida County: PATRICK F. O'MELIA, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1     SEIDL, J.   Michael Anderson owns shoreland property in the Town of Newbold (the Town) that he sought to divide into two lots.  The Town denied Anderson's proposed division on the ground that the two lots would fail to comply with the Town's applicable minimum shoreland frontage requirement.  The issue

before us is whether the Town may lawfully enforce its shoreland frontage requirement, which it enacted under its subdivision authority, even though an identical shoreland frontage requirement would not be enforceable had the Town enacted it under its zoning authority.

¶2     We conclude that the plain language of the applicable subdivision enabling statute gave the Town authority to enact its minimum shoreland frontage requirement.   Thus, even though our state legislature has removed shoreland zoning authority for towns through the enactment of WIS. STAT. §§ 281.31 and 59.692 (2017-18),[1] we affirm the circuit court's order upholding the Town's decision.

¶3     We recognize in reaching our decision that there is undeniable tension between the legislature's decision to restrict towns' shoreland zoning authority while at the same time granting towns the power to enact a shoreland frontage requirement under their subdivision authority.   We conclude, however, that in the absence of clear legislative intent demonstrating that the zoning enabling statute takes priority over the subdivision enabling statute, it is not the role of this court to resolve that tension.   That task lies within the purview of the legislature alone.

## BACKGROUND

¶4     Anderson owns a lot in the Town that has 358.43 feet of shoreland frontage on Lake Mildred, and thus is classified as shoreland property.   *See* WIS.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2

STAT. §§ 59.692(1)(b), 281.31(2)(d). In 2016, Anderson submitted a certified survey map to the Town that proposed dividing his current lot into two lots. The two proposed lots were to have shoreland frontage of 195 and 163.43 feet, respectively.

¶5 The Town's planning commission considered Anderson's proposal at its November 3, 2016 meeting. According to the minutes of that meeting, the commission voted to recommend that the Town deny the request "because it does not comply with Town of Newbold On-Water Land Division Standards 13.13[.02 ("the Subdivision Ordinance")] which requires a minimum 225 foot lot width at the ordinary high water mark" on Lake Mildred. One week later, the town board adopted this recommendation and thereby denied Anderson's proposal.

¶6 Anderson sought certiorari review of the Town's decision in the circuit court. The court ultimately affirmed the Town's authority to enforce the Subdivision Ordinance and therefore upheld the Town's denial of Anderson's proposed subdivision. Anderson now appeals.

## STANDARD OF REVIEW

¶7 On an appeal from a judgment on certiorari, we review the actions of the town board, not the circuit court. *Lake Delavan Prop. Co., LLC v. City of Delavan*, 2014 WI App 35, ¶5, 353 Wis. 2d 173, 844 N.W.2d 632. Certiorari review requires us to consider whether the board: (1) kept within its jurisdiction; (2) acted according to law; (3) acted in an arbitrary, oppressive, or unreasonable manner; and (4) whether the evidence was such that the board might reasonably have made the order or determination in question. *Id.*, ¶4.

¶8      Here, the sole issue is whether the town board acted according to law.  To resolve this issue, we must interpret portions of WIS. STAT. §§ 59.692 and 236.45.   Statutory interpretation presents a question of law that we review independently.  *Wood v. City of Madison*, 2003 WI 24, ¶11, 260 Wis. 2d 71, 659 N.W.2d 31.

¶9      When interpreting a statute, our objective "is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.   Our analysis begins with the plain language of the statute. *Id.*, ¶45. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.  *Id.*  In addition, statutory language must be interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.  *Id.*, ¶46.  Where possible, we must read statutory language so as to give reasonable effect to every word, in order to avoid surplusage.  *Id.*

## DISCUSSION

¶10     This case concerns the interplay between two "complementary land planning devices"—zoning and subdivision control.  *See **Town of Sun Prairie v. Storms***, 110 Wis. 2d 58, 68, 327 N.W.2d 642 (1983).  More specifically, the question on appeal is whether a town retains the authority, granted to it under WIS. STAT. § 236.45, to enact subdivision regulations in a shoreland area, despite the fact that our legislature has prohibited a town from enacting shoreland zoning regulations, pursuant to WIS. STAT. § 59.692.  To answer this question, we must

first provide a brief overview of the "separate and independent enabling legislation" that governs a town's authority to enact subdivision control regulations and zoning regulations. *See* ***Town of Sun Prairie***, 110 Wis. 2d at 70.

¶11 As a general matter, both towns and counties possess the authority to zone. *See* WIS. STAT. §§ 59.69, 60.22(3), and 60.61. Only counties, however, may enact shoreland zoning ordinances,[2] except for in a limited circumstance that the parties do not argue exists in this case.[3] *See* ***Hegwood v. Town of Eagle Zoning Bd. of Appeals***, 2013 WI App 118, ¶9, 351 Wis. 2d 196, 839 N.W.2d 111. As explained in ***Hegwood***, the conclusion that towns may not enact shoreland zoning ordinances is compelled by the "plain language of the statutory scheme [which] evinces that by enactment of WIS. STAT. §§ 281.31 and 59.692, the legislature intended that towns would not have authority to regulate shorelands" through the passage of zoning ordinances. *Id.*, ¶16.

¶12 Although towns are prohibited from enacting shoreland zoning ordinances, they do have the general authority to enact subdivision regulations. *See* WIS. STAT. § 236.45. As our supreme court has explained, WIS. STAT. ch. 236 provides "separate and independent enabling legislation [as compared to zoning

---

[2] Following our decision in ***Hegwood v. Town of Eagle Zoning Board of Appeals***, 2013 WI App 118, 351 Wis. 2d 196, 839 N.W.2d 111, our legislature adopted 2015 Wis. Act 41, which created WIS. STAT. §§ 60.61(3r) and 60.62(5). These new subsections appear to modify our decision in ***Hegwood*** to clarify that although towns do not have authority to enact a zoning ordinance that is specific to shoreland areas, they may still enact and apply a general zoning ordinance that applies in both shoreland and non-shoreland areas. *See* §§ 60.61(3r) and 60.62(5). As neither party argues that these new subsections have any impact on our analysis in this case, we will not further discuss them and our opinion should not be construed as definitively interpreting either subsection.

[3] The limited circumstance to which we refer is governed by a "grandfather" clause provided in WIS. STAT. § 59.692(2)(b).

legislation] for local governments to enact subdivision control regulations. Separate and distinct procedures are required for the adoption of such regulation as compared to zoning ordinances." ***Town of Sun Prairie***, 110 Wis. 2d at 70 (footnote omitted).

¶13 With this legal background in mind, we turn to the specifics of Anderson's arguments on appeal. He first contends that although the Town undisputedly enacted the Shoreland Ordinance pursuant to the conditions and procedures of WIS. STAT. ch. 236, it is in actuality a disguised zoning ordinance.[4] Thus, because the Town has no authority to enact a shoreland zoning ordinance, he argues the Town may not enforce the Shoreland Ordinance.[5]

¶14 Anderson's argument that the Shoreland Ordinance is a disguised zoning ordinance relies primarily on the fact that it shares many characteristics with a zoning ordinance. In short, he states that "if it looks like a zoning function, and acts like a zoning function, it is a zoning function."

---

[4] We note that, on appeal, Anderson cites extensively to ***Lagoon Lane, LLC v. Rice***, No. 2016AP2118, unpublished slip op. (WI App Apr. 25, 2018), an unpublished per curiam opinion, for persuasive value in violation of WIS. STAT. RULE 809.23(3)(a)-(b). We therefore do not credit Anderson's argument under ***Lagoon Lane***, and we admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

[5] Anderson also notes that under WIS. ADMIN. CODE § NR 115.05(1)(a)2. (Jan. 2017), a county shoreland zoning ordinance for unsewered lots "shall have a minimum average width of 100 feet and a minimum area of 20,000 square feet." Based on this requirement, he argues that the Town cannot enforce the Shoreland Ordinance because its 225 foot frontage requirement is more restrictive than § NR 115.05(1)(a)2. We need not address this argument, however, because § NR 115.05(1) applies solely to "shoreland zoning ordinance[s]." And, for reasons set forth above, the Town has no authority to exercise shoreland zoning authority. Therefore, if we were to conclude that the Shoreland Ordinance was an exercise of the Town's zoning authority, it would be unenforceable regardless of whether it is more or less restrictive than the standards set forth in § NR 115.05(1)(a)2.

¶15 The main problem with Anderson's argument is that there is inherently a significant overlap between subdivision and zoning powers. *See Wood*, 260 Wis. 2d 71, ¶¶23, 29. This overlap results from the fact that zoning and subdivision are "complementary land devices," which makes it difficult—at best—to definitively classify a particular regulation as being either a subdivision or zoning ordinance. *See Town of Sun Prairie*, 110 Wis. 2d at 68. Stated differently, "there is no sharp distinction between zoning and platting,"[6] as both share common objectives like "dividing a municipality into districts and adoption of a comprehensive plan with regard to roads, streets, transportation facilities, schools, parks, etc., usually on recommendations by an appropriate commission." *State ex rel. Albert Realty Co. v. Village Bd.*, 7 Wis. 2d 93, 97-98, 95 N.W.2d 808 (1959) (citation omitted).

¶16 It was against this murky backdrop that our supreme court provided guidance for determining whether a regulation is a valid exercise of a municipality's subdivision authority in *Town of Sun Prairie*. Specifically, the court stated: "As long as the regulation is authorized by and within the purposes of [WIS. STAT.] ch. 236, the fact that it may also fall under the zoning power does not preclude a local government from enacting the regulation pursuant to the conditions and procedures of ch. 236." *Town of Sun Prairie*, 110 Wis. 2d at 70-71. Given that Anderson fails to develop any argument that the Shoreland Ordinance was not enacted "pursuant to the conditions and procedures of ch. 236," and instead focuses merely on how it shares characteristics of a zoning ordinance,

---

[6] A plat is a "map of a subdivision." WIS. STAT. § 236.02(8).

we reject his argument.[7]  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶17    Anderson next argues that even if the Town lawfully enacted the Shoreland Ordinance under the authority granted by WIS. STAT. ch. 236, the fact that an identical frontage restriction would be unlawful if the Town attempted to enact it as a zoning ordinance creates a statutory conflict.  Anderson further contends that to resolve this conflict, we must reconcile the statutes by concluding that the power granted to towns under WIS. STAT. § 236.45 was impliedly revoked by the enactment of WIS. STAT. § 59.692.[8]  We decline to reconcile the statutes as Anderson suggests for the following reasons.

¶18    First, WIS. STAT. § 59.692 repeatedly states that its provisions apply only to zoning ordinances "enacted under this section."  *See, e.g.*, § 59.692(1)(c), (1d)(a), (1r), (2)(a)-(c), (5).  Given the legislature's deliberate choice to include

---

[7] Beyond any failure on Anderson's part to develop an argument that the Shoreland Ordinance was not enacted pursuant to the conditions and procedures of WIS. STAT. ch. 236, we note that, in this particular instance, it was, in fact, Anderson's proposed subdivision of land and not a newly proposed "use" of the land that created the violation.  In that regard, the facts here suggest a primacy of the Town's exercise of its subdivision authority as opposed to its zoning authority, regardless of the commonality of certain characteristics between the two complementary land planning devices.  *See Zwiefelhofer v. Town of Cooks Valley*, 2012 WI 7, ¶¶35-43, 338 Wis. 2d 488, 809 N.W.2d 362 (describing "those characteristics that are at the heart of traditional zoning ordinances"—including the general function of a zoning ordinance to provide landowners with permitted uses of their land).

[8] WISCONSIN STAT. ch. 236 was "comprehensively revised" in 1955 and, although individual sections have undergone revisions since that date, it provides the current subdivision law that governs this case.  *See Wood v. City of Madison*, 2003 WI 24, ¶58, 260 Wis. 2d 71, 659 N.W.2d 31 (Prosser, J., concurring).  In addition, we note that WIS. STAT. § 236.45(2) (1955-56) granted towns the authority to enact subdivision ordinances prior to our legislature's adoption of 1965 Wis. Laws, ch. 614, §§ 22, 42.  That law enacted WIS. STAT. §§ 59.971 and 144.26, which were the predecessors to WIS. STAT. §§ 59.692 and 281.31, respectively.

this limiting language, we are not free to simply ignore it. *See Kalal*, 271 Wis. 2d 633, ¶46 (stating we interpret statutes, where possible, to avoid surplusage). Accordingly, because a subdivision ordinance enacted under WIS. STAT. ch. 236 is clearly not enacted under § 59.692, a plain reading of § 59.692 does not support a conclusion that the legislature intended to revoke a town's authority to exercise its valid subdivision authority under ch. 236 through its adoption of § 59.692.

¶19    Second, WIS. STAT. § 236.45(2)(b) states: "This section and any ordinance adopted pursuant thereto shall be liberally construed in favor of the municipality, town or county and shall not be deemed a limitation or repeal of any requirement or power granted or appearing in this chapter or elsewhere, relating to the subdivision of lands."  Notably, there is no provision in § 236.45 that restricts a town's authority to regulate the subdivision of shoreland property.

¶20    Moreover, no provision appears in WIS. STAT. § 59.692 that instructs us to liberally construe that statute.  Thus, to conclude that § 59.692 impliedly revoked a town's authority to enact subdivision ordinances in shoreland areas would require us to ascribe greater priority to a statute that the legislature has not instructed to be liberally construed than to one that it has instructed to be liberally construed.  We decline to do so.

¶21    Notwithstanding our above analysis, we recognize that there is undeniable tension between WIS. STAT. §§ 59.692 and 236.45.  Indeed, it may seem incongruent, and perhaps even a matter of bad policy, to allow a town to enforce a regulation enacted under one statutory subsection that it would not be allowed to enforce if it had enacted its ordinance under a different subsection.  But it is not the function of this court to make policy decisions or to rewrite statutes to accomplish a result that a party urges upon us.  *See Milwaukee Journal Sentinel*

*v. City of Milwaukee*, 2012 WI 65, ¶¶36-37, 341 Wis. 2d 607, 815 N.W.2d 367. Instead, we leave such actions to the legislature.

¶22    In sum, we conclude the Town has the authority to enforce the Shoreland Ordinance, which, again, was undisputedly enacted as a lawful exercise of the Town's subdivision authority under WIS. STAT. § 236.45.  Accordingly, we affirm the circuit court order that upheld the Town's denial of Anderson's proposed division of his current lot.

*By the Court.*—Order affirmed.